J-S44045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.P., a<br>Minor | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.V.P., Mother | : | No. 3657 EDA 2015 |
| | : | |

Appeal from the Decree entered October 27, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000257-2015,
CP-51-DP-0002517-2013

BEFORE: FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 30, 2016**

A.V.P. ("Mother") appeals from the Decree granting the Petition filed

by the Philadelphia Department of Human Services ("DHS"), seeking to

involuntarily terminate Mother's parental rights to her son, N.M.P. (born in

August of 2013) (hereinafter, "Child"), pursuant the Adoption Act, 23

Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change Child's

permanency goal from reunification to adoption, pursuant to the Juvenile

Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

On April 27, 2015, DHS filed the Petition to terminate Mother's

parental rights to Child (hereinafter, "the Petition").  The trial court held an

---

[1] In a separate Decree entered on October 27, 2015, the trial court
terminated the parental rights of Child's unknown father.  Additionally, the
trial court entered an Order, on that same date, withdrawing the Petition for
involuntary termination that DHS had filed against J.J., who was previously
designated as Child's father, as there is no father listed on Child's birth
certificate.

evidentiary hearing on the Petition on October 27, 2015. At the hearing, DHS presented the testimony of Melanie Handberry ("Handberry"), the *Associacion Puertorriquenos en Marcha* ("APM") – Community Umbrella Agency ("CUA") supervisor. N.T., 10/27/15, at 9. DHS then presented the testimony of Bessie Lee, the DHS social worker assigned to the case. *Id.* at 36. Mother testified on her own behalf. *Id.* at 38.

The trial court found that Mother has another child, N., and Mother's rights were terminated as to N. on June 13, 2013. Trial Court Opinion, 12/29/15, at 1; N.T., 10/27/15, at 9.[2] Additionally, the trial court noted that Judge Walter Olszewski previously made a finding of aggravated circumstances regarding Child on June 17, 2014, based on the termination of Mother's parental rights to N. Trial Court Opinion, 12/29/15, at 1; N.T., 10/27/15, at 9.

The trial court set forth the remaining factual background and procedural history as follows:

> On [December 20,] 2013[, Child, who was approximately three months old,] arrived at St. Christopher's Hospital [in Philadelphia] dehydrated and losing weight. Mother was incoherent and unable to respond. DHS [thereafter] obtained [an Order of protective custody concerning Child,] and sought emergency placement. (N.T.[, 10/27/15, at] 10);
>
> [On] January 7, 2014[, Child] was adjudicated [d]ependent[, and committed to the care of DHS.] ([*Id.* at] 11);

---

[2] N. was adopted by Child's maternal aunt and uncle. N.T., 10/27/15, at 33.

[On] January 17, 2014[, a permanency] planning [meeting was conducted, wherein DHS] set goals for [M]other to attend mental health treatment and seek reunification. Mother was invited to [the] planning meeting[, but] failed to appear. Mother's objectives were to attend mental health services at CO[MH]AR,[3] [] attend [the Clinical Evaluation Unit ("CEU")] for a drug screen [and] assessment[, have a Behavioral Health Services] consult and evaluation, comply with CUA services[,] and … comply with court[-]ordered visitation. ([*Id.* at] 12);

Mother failed to attend drug and alcohol treatment[.] ([*Id.* at] 13);

[On] April [20,] 2014[,] Mother appeared at CEU for [a] drug screen[;] she tested positive for [m]arijuana and PCP. [Mother t]hen never appeared for another assessment or drug screen[.] ([*Id.*]);

Mother [participated in mental health [treatment] at CO[MH]AR and PATHWAYS. She was discharged from CO[MH]AR after an altercation with staff. She was also discharged from PATHWAYS for non[-]compliance. Mother [has] a mental health diagnosis of [bip]olar disorder and [s]chizophrenia[.] ([*Id.* at] 13-14);

Mother attended supervised visitation with [C]hild for 2-3 months. This visitation was suspended in April 2014[,] after [M]other attempted to stuff [C]hild down her pants and leave the [CUA] building[.] ([*Id.* at] 15).

[Also in April 2014, Child was placed with his pre-adoptive foster mother, with whom Child currently resides. *Id.* at 18-19.]

Mother was offered reinstatement of visitation if she complied with a parenting capacity evaluation[; however,] [M]other refused[.] ([*Id.*] at 15);

[Mother's visitation of Child was reinstated in February 2015; however, she never requested to visit Child. *Id.* at 60.]

_____

[3] COMHAR (the Community Organization for Mental Health and Rehabilitation) is a mental health treatment facility located in Philadelphia.

Mother has been minimally cooperative with CUA, resurfacing periodically to supply contact information[,] but [she] then [would] not respond to agency attempts to communicate[.] ([*Id.* at] 16);

Mother has never completed any of her single case plan objectives[.] ([*Id.*]);

As of [the] date of [the] termination hearing, [October 27, 2015, C]hild has had no interaction with [M]other since her attempt to abduct him … in April 2014 [(]or 18 months[.)] ([*Id.*]);

Child is thriving in [his] foster home and has bonded with [his] foster family[.] ([*Id.* at] 17-19);

Mother has also failed to appear at court hearings for goal changes and reviews[.] ([*Id.* at] 54).

Trial Court Opinion, 12/29/15, at 1-2 (footnote added).

On October 27, 2015, the trial court entered the Decree terminating Mother's parental rights pursuant to 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and an Order changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act. On November 30, 2015, Mother timely filed a Notice of Appeal from the Decree and Order pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4]

Mother now presents the following issues for our review:

A. Whether the [trial] court erred in failing to find that for the six months immediately preceding the filing of the [P]etition, when [Child] was bonded with [Mother], when [Child's] other siblings

_____

[4] We note that the appeal is timely, as the thirtieth day following the entry of the Decree fell on a court holiday, when the court was closed. **See** Pa.R.A.P. 903(a) (providing that a notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken); 1 Pa.C.S.A. § 1908 (regarding computation of time).

were placed in New Jersey with an aunt, who was granted [Permanent Legal Custodianship ("PLC")], and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with [Child], and did not intend to relinquish her claim to [Child] or refused and/or failed to perform parental duties[?]

B. Whether the [trial] court erred in failing to find that for the six months immediately preceding the filing of the [P]etition, [M]other had consistent contact and visits with [Child], when [Child] was bonded with her, when [Child's] other siblings were placed in New Jersey with an aunt, who was granted PLC, and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with [Child?]

C. Whether the [trial] court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of [Child] by [Mother], when [Child] was bonded with her, when [Child's] other siblings were placed in New Jersey with an aunt, who was granted PLC, and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with [Child?]

D. Whether the [trial] court erred in finding that the conditions which led to the removal or placement of [Child] continue to exist, as to father,[5] when [Child] was bonded with [Mother], when [Child's] other siblings were placed in New Jersey with an aunt, who was granted PLC, and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with [Child?]

E. Whether the [trial] court erred in finding that the conditions which led to the removal or placement of [Child] continue to exist and termination of parental rights would best serve the needs and welfare of [Child], when [] [M]other can remedy the

_____

[5] Mother's isolated reference in her issue to "father" appears to be a typographical error. Child's unknown father is not a party to this appeal.

conditions within a reasonable period of time, and when [Child] was bonded with [Mother], when [Child's] other siblings were placed in New Jersey with an aunt, who was granted PLC, and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with her [Child?]

F. Whether the [trial] court erred in finding that DHS made[] reasonable efforts toward reunification, by either failing and/or refusing to help find a viable option or to consider options other than terminating [M]other's parental rights, when [Child] was bonded with her, when [Child's] other siblings were placed in New Jersey with an aunt, who was granted PLC, and when [] [M]other made efforts towards completing a parenting class, stabilizing her mental health issues, seeking housing for herself and [Child], and was visiting with [Child?]

G. Whether the [trial] court erred in terminating the rights of [M]other, when the sole reason she was unable to obtain housing, [and] provide medical care for the care and maintenance of [Child], was her lack of income[?]

H. Whether the [trial] court erred in terminating the rights of [] [M]other where it was not supported by clear and convincing evidence and not in the best interests of [Child], and there was a bond between [] [M]other and [C]hild[,] and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of [Child], pursuant to 23 P[a.C.S.A.] Section 2511(b)[?]

Mother's Brief at 3-4 (footnote added).[6]  We will address Mother's related

---

[6] Mother waived any challenge concerning the trial court's changing of Child's permanency goal from reunification to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351, by failing to include this issue in her court-ordered Rule 1925 Concise Statement and Statement of Questions Involved portion of her brief. ***See Krebs v. United Ref. Co. of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

issues together.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. … [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus on section 2511(a)(2) and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.**-- The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**-- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

Concerning the termination of parental rights based upon a finding of parental incapacity under section 2511(a)(2), our Pennsylvania Supreme Court has stated that

[a] decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d at 827 (citation omitted). In accordance with the Adoption Act, a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Additionally, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d 1108, 1125 (Pa. Super. 2010) (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Mother contends that the trial court abused its discretion by terminating her parental rights under section 2511(a)(2) because she (1) was consistently visiting and bonded with Child; (2) obtained mental health treatment and "has addressed her mental health issues"; (3) participated in drug and alcohol treatment; (4) was working towards completion of her single case plan objectives; (5) did not intend to relinquish her claim to Child; and (6) did not refuse and/or fail to perform parental duties. *See* Mother's Brief at 7, 13. Additionally, Mother contends that she "certainly did

not want to lose the contact she was having with [Child] and hoped [Child] would be placed with family members." *Id.* at 12; *see also id.* at 13; (asserting that Mother "has shown continued positive intent in establishing a home for her and [Child] and assuming her parental responsibilities[,] or[,] in the alternative, to have [Child] reside with family members and siblings.").

The trial court assessed the evidence regarding Mother's repeated incapacity to parent Child, and her inability to remedy the conditions and causes of her incapacity to parent Child. *See* Trial Court Opinion, 12/29/15, at 4. The court additionally pointed out that Mother (1) failed to meet her single case plan objectives; (2) had a positive result for drugs in one of her drug screens, after which she stopped attending scheduled screens; (3) was minimally compliant with her mental health treatment for her bipolar disorder and schizophrenia, and was discharged from two mental health providers for non-compliance and aggressive conduct; (4) attended supervised visitation for only 2-3 months, until visitation was revoked after she had attempted to abduct Child; (5) did not seek reinstatement of her visitation rights; (6) has been minimally compliant with CUA; and (7) has not seen Child for approximately 18 months, the last time being when Child was only approximately seven months old. *Id.* The trial court expressed "grave concern about [M]other's ability to provide the level of protection, security and stability that [] [C]hild needed …." *Id.* at 3.

Our review discloses that the evidence supports the trial court's determination that the repeated and continued incapacity of Mother has caused Child to be without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity cannot or will not be remedied by Mother. Further, the court's legal conclusions are not the result of an error of law or an abuse of discretion. We therefore affirm the trial court's decision with regard to section 2511(a)(2). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Additionally, Mother contends that DHS did not make reasonable efforts to avoid the termination of her parental rights. *See* Mother's Brief at 13. However, our Supreme Court has held that the trial court is not required to consider reasonable efforts in relation to a decision to terminate parental rights under section 2511(a)(2). *In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). Thus, Mother's argument does not entitle her to relief.[7]

Next, we review the termination of Mother's parental rights under section 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the

---

[7] Moreover, contrary to Mother's claim, the record indicates that DHS had considered Child's maternal aunt and uncle as a possible kinship placement resource for Child. *See* N.T., 10/27/15, at 30-31, 33.

emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted).

Mother asserts that she maintained contact with Child and made progress to alleviate the problems that led to Child being placed in care. Mother's Brief at 15.  Mother claims she attended drug and mental health programs and had supervised visits with Child.  *Id.*  According to Mother, there was very little evidence that the bond between her and Child has been broken, and there was scant testimony concerning the likely effect on Child from severing any bond that might exist.  *Id.*  Mother argues that, without evidence of the impact that termination would have on Child, the trial court could not conduct a proper section 2511(b) analysis.  *Id.*  Additionally, Mother points out that there was no expert testimony presented regarding Child's best interests, as to Child's physical, intellectual, moral, and spiritual well-being.  *Id.*  She further asserts that there was no expert testimony as to the relationship, interaction, and bond between Mother and Child.  *Id.* Mother urges that, "[g]iven the circumstances of the family and the efforts that all parties put forth for the family," Child's interests would be best served by (1) the denial of the Petition; (2) a remand for testimony and evidence concerning the bond between Mother and Child; or (3) in the alternative, to explore his placement with family and siblings.  *Id.* at 15-16.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. This Court has also has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Additionally, it is appropriate to consider a child's bond with his or her foster parent. *In re T.S.M.*, 71 A.3d at 268.

In the present matter, the trial court considered the needs and welfare of Child, and set forth its bond-effect analysis. *See* Trial Court Opinion, 12/29/15, at 5. The court found that "the testimony established [that C]hild would not suffer any irreparable emotional harm if [] [M]other's parental rights were terminated. Furthermore, [Handberry] testified that … [Child] is thriving in [his] foster home and has bonded with [his] foster family." *Id.*;[8] *see also In re K.Z.S.*, *supra* (stating that no bond worth preserving is formed between a child and a parent where the child has been in foster care for most of the child's life); *In re T.S.M.*, *supra*.

---

[8] Handberry testified that (1) Child has resided with his pre-adoptive foster family for 18 months, which comprises most of his life; (2) Child is bonded with his foster mother, whom he calls "mommy"; and (3) to remove Child from her care would cause Child serious harm. N.T., 10/27/15, at 18-19.

The record reflects that that the trial court properly considered the best interests of Child in rendering its decision to terminate Mother's parental rights. As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decision with regard to section 2511(b). ***See In re Adoption of S.P.***, 47 A.3d at 826-27.

Accordingly, we affirm the Decree terminating Mother's parental rights, and changing Child's goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016

- 14 -